# EXHIBIT A

09/26/2013 THU 10:23 FAX                                                                    ☑002/021

## SUMMONS

Attorney(s) Callagy Law, LLC

Office Address 650 From Road, Suite 565

Town, State, Zip Code Paramus, New Jersey 07652

Telephone Number (201) 261-1700

Attorney(s) for Plaintiff

JAMES O'KEEFE, III

_____ Plaintiff(s)

Vs.

WDC MEDIA, LLC; MAINJUSTICE.COM; JOHN DOE
INDIVIDUALS 1 TO 5; ABC CROPORATIONS 1 TO 5,
_____ Defendant(s)

**Superior Court of
New Jersey**

BERGEN _____ COUNTY

LAW _____ DIVISION

Docket No: BER-L-7145-13

**CIVIL ACTION
SUMMONS**

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

S/ Elizabeth Ann Strom

Clerk of the Superior Court

DATED: 09/25/2013

Name of Defendant to Be Served: WDC MEDIA, LLC

Address of Defendant to Be Served: 2122 P. Street NW, Suite 201, Washington, D.C., 20037

Revised 09/04/2012, CN 10792-English (Appendix XII-A)

09/26/2013 THU 10:24 FAX                                                    ☒003/021

Appendix XII-B1

| CIVIL CASE INFORMATION STATEMENT (CIS) | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|
| Use for initial Law Division Civil Part pleadings (not motions) under *Rule* 4:5-1 Pleading will be rejected for filing, under *Rule* 1:5-6(c), if information above the black bar is not completed or attorney's signature is not affixed | PAYMENT TYPE: ☐CK ☐CG ☐CA |
| | CHG/CK NO. |
| | AMOUNT: |
| | OVERPAYMENT: |
| | BATCH NUMBER: |

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Matthew R. Major, Esq. | (201) 261-1700 | Bergen |

| FIRM NAME (if applicable) | DOCKET NUMBER (when available) |
|---|---|
| Callagy Law, LLC | L - 7145-13 |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| Mack-Cali Centre II 650 From Road - Suite 565 Paramus, NJ 07652 | Complaint |
| | JURY DEMAND   ☒ Yes   ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| James O'Keefe, III, Plaintiff | O'Keefe v. WDC Media, et al. |

| CASE TYPE NUMBER (See reverse side for listing) 609 | HURRICANE SANDY RELATED? ☐ YES   ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES   ☒ NO |
|---|---|---|
| | | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING? ☐ YES   ☒ No | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐ YES   ☒ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)   ☐ NONE   ☒ UNKNOWN |
|---|---|

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☐ YES   ☒ No | IF YES, IS THAT RELATIONSHIP: ☐ EMPLOYER/EMPLOYEE   ☐ FRIEND/NEIGHBOR   ☐ OTHER (explain) ☐ FAMILIAL   ☐ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☐ Yes   ☒ No |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ YES   ☒ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED? ☐ YES   ☒ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:

Effective 08-19-2013, CN 10517-English                                      page 1 of 2

☒004/021



**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule 4:5-1*

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 160 days' discovery**
151  NAME CHANGE
175  FORFEITURE
302  TENANCY
399  REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502  BOOK ACCOUNT (debt collection matters only)
505  OTHER INSURANCE CLAIM (including declaratory judgment actions)
506  PIP COVERAGE
510  UM or UIM CLAIM (coverage issues only)
511  ACTION ON NEGOTIABLE INSTRUMENT
512  LEMON LAW
801  SUMMARY ACTION
802  OPEN PUBLIC RECORDS ACT (summary action)
999  OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
305  CONSTRUCTION
509  EMPLOYMENT (other than CEPA or LAD)
599  CONTRACT/COMMERCIAL TRANSACTION
603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
605  PERSONAL INJURY
610  AUTO NEGLIGENCE – PROPERTY DAMAGE
621  UM or UIM CLAIM (includes bodily injury)
699  TORT – OTHER

**Track III - 450 days' discovery**
005  CIVIL RIGHTS
301  CONDEMNATION
602  ASSAULT AND BATTERY
604  MEDICAL MALPRACTICE
606  PRODUCT LIABILITY
607  PROFESSIONAL MALPRACTICE
608  TOXIC TORT
609  DEFAMATION
616  WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617  INVERSE CONDEMNATION
618  LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
156  ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303  MT. LAUREL
508  COMPLEX COMMERCIAL
513  COMPLEX CONSTRUCTION
514  INSURANCE FRAUD
620  FALSE CLAIMS ACT
701  ACTIONS IN LIEU OF PREROGATIVE WRITS

**Multicounty Litigation (Track IV)**
266  HORMONE REPLACEMENT THERAPY (HRT)          288  PRUDENTIAL TORT LITIGATION
271  ACCUTANE/ISOTRETINOIN                              289  REGLAN
274  RISPERDAL/SEROQUEL/ZYPREXA                    290  POMPTON LAKES ENVIRONMENTAL LITIGATION
278  ZOMETA/AREDIA                                          291  PELVIC MESH/GYNECARE
279  GADOLINIUM                                              292  PELVIC MESH/BARD
281  BRISTOL-MYERS SQUIBB ENVIRONMENTAL      293  DEPUY ASR HIP IMPLANT LITIGATION
282  FOSAMAX                                                   295  ALLODERM REGENERATIVE TISSUE MATRIX
284  NUVARING                                                 296  STRYKER REJUVENATE/ABG II MODULAR  HIP STEM COMPONENTS
285  STRYKER TRIDENT HIP IMPLANTS              297  MIRENA CONTRACEPTIVE DEVICE
286  LEVAQUIN                                                 601  ASBESTOS
287  YAZ/YASMIN/OCELLA                                   623  PROPECIA

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

Please check off each applicable category  ☐ Putative Class Action   ☐ Title 59

✆005/021

BERGEN COUNTY COURTHOUSE
SUPERIOR COURT LAW DIV
BERGEN COUNTY JUSTICE CTR RM 415
HACKENSACK    NJ 07601-7680

                                              TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (201) 527-2600
COURT HOURS

                          DATE:    SEPTEMBER 20, 2013
                          RE:      KEEFE III VS WDC MEDIA
                          DOCKET:  BER L -007145 13

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

     DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON ROBERT C. WILSON

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      002
AT:  (201) 527-2600.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                          ATTENTION:

                               ATT: MATTHEW R. MAJOR ESQ
                               CALLAGY LLC              SEAN       R
                               650 FROM ROAD  SUITE 565
                               PARAMUS            NJ 07652

JUBCAR7


                              PARKING NOTICE
                            Through July 31, 2015
                         Visitors to the Justice Center are
                           directed to the Lot located at
                         104 River St, Hackensack.
                          Regular shuttles round trip
                        available from 7:30 am to 7:00 pm

**CALLAGY LAW**
*A Limited Liability Company*
Matthew R. Major, Esq. (03518-2010)
Mack-Cali Centre II
650 From Road, Suite 565
Paramus, New Jersey 07652
(201) 261-1700
Attorneys for Plaintiff, James O'Keefe, III.

SUPERIOR COURT BERGEN COUNTY
**FILED**

SEP 1 8 2013

*[signature]*
DEPUTY CLERK

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: BERGEN COUNTY

DOCKET NO.: BER-L- 7145 -13

COMPLAINT

|  |  |
|---|---|
| JAMES O'KEEFE, III, | : |
| Plaintiff, | : |
| v. | : |
| WDC MEDIA, LLC,: MAINJUSTICE.COM, JOHN DOE: INDIVIDUALS 1 TO 5, AND ABC: CORPORATIONS 1 TO 5, | : |
| Defendants. | : |

Plaintiff James O'Keefe, III, ("Plaintiff") by way of Complaint against the Defendants WDC Media, LLC ("WDC Media"), MainJustice.com ("MainJustice.com"), John Doe Individuals 1 to 5, and ABC Corporations 1 to 5 (collectively referred to as the "Defendants") alleges as follows:

PARTIES

1.   Plaintiff, James O'Keefe, III ("Plaintiff") is an individual residing at 121 Goodwin Terrace, Westwood, New Jersey. No earlier than August 26, 2013, Plaintiff has suffered and continues to suffer damage by the defamatory article published by the Defendants.

2.   Upon information and belief, Defendant, WDC Media, LLC ("WDC Media") is a limited liability corporation with its principal location at 2122 P. St. NW, Suite 201, Washington, D.C., 20037. Upon further information and belief, WDC Media is the publisher of

Defendant MainJustice.com and is directly responsible for maliciously publishing the false and defamatory statements referenced herein.

3.      Upon information and belief, Defendant, MainJustice.com ("MainJustice.com") is a business entity primarily controlled by Defendant WDC Media, with its principal location at 2122 P. St. NW, Suite 201, Washington, D.C., 20037. MainJustice.com is the online website wherein the false and defamatory statements referenced herein are maliciously published.

4.      Defendant's John Doe Individuals 1 to 5 are fictitious names representing one or more persons whose identities are presently unknown to Plaintiff, but who caused, contributed and/or benefited from the conduct of the other Defendants as set forth below. Plaintiff will seek leave to amend this Complaint to state the true names and capacities of the fictitiously names individual Defendants when they become ascertained.

5.      Defendant's ABC Corporation 1 to 5 are fictitious names representing one or more public or private corporations or business entities whose identities are presently unknown to Plaintiff, but which Defendant controls and caused, contributed and/or benefited from the conduct of the other Defendants as set forth below. Plaintiff will seek leave to amend this Complaint to state the true names and capacities of the fictitiously named corporate Defendants when they become ascertained.

## COUNT ONE
### Libel and Libel *Per Se*

6.      Defendant WDC Media publishes and maintains an internet news website titled MainJustice.com.

7.      No earlier than August 26, 2013, Defendants falsely and maliciously published that Plaintiff, "pleaded guilty to misdemeanor charges that [Plaintiff] entered the suburban New

Orleans offices of Sen. Mary Landrieu under false pretenses. Wearing hard hats, tool belts and reflective vests, [Plaintiff] had pretended to be telephone repairman and were apparently trying to *bug* Landrieu's phones" (emphasis added). This statement was not true when made by the Defendants.

8.      On August 29, 2013, Plaintiff and/or the Plaintiff's representatives notified Defendants of the statement's falsity. Specifically, Plaintiff and/or Plaintiff's representatives forwarded to Defendants the written guilty plea referenced in Defendants' published article which states in pertinent, ". . . further investigation did not uncover evidence that the defendants intended to commit any felony . . . . Instead, the Government's evidence would show that the defendants misrepresented themselves and their purpose for gaining access . . . not to actually tamper with the phone system, or to commit any other felony."

9.      After being advised by the Plaintiff and/or the Plaintiff's representatives of the statement's falsity, Defendants, no earlier than August 29, 2013, modified the online publication to read that Plaintiff, "pleaded guilty to misdemeanor charges that [Plaintiff] entered the suburban New Orleans offices of Sen. Mary Landrieu under false pretenses. Wearing hard hats, tool belts and reflective vests, [Plaintiff] had pretended to be telephone repairman and were apparently trying to *tamper* with Landrieu's phones" (emphasis added). This statement was not true when made by the Defendant.

10.      Despite being informed that both statements were false, Defendants did not publish a retraction even though Defendants were made aware that the responsible United States Attorney determined that there was no evidence that Plaintiff tampered, bugged or intended to tamper with or bug the Senator's phones.

11.      By maliciously publishing for a second time the false statement that Plaintiff

3

had attempted to "tamper with" a Senator's phones, which would constitute a felony if true, the Defendants committed libel or defamation *per se*. Moreover, the statement was made with actual knowledge of its falsity and malice driven by the Defendants' opinion that Plaintiff was a "conservative prankster," who, "specializes in often deceptively edited undercover camera work."

12.    Plaintiff has suffered and continues to suffer damages as a result of the malicious conduct of the Defendants including, but not limited to, loss of reputation in the community and the reluctance of others to associate with him in his business.

WHEREFORE, Plaintiff demands judgment against the Defendants for all monetary damages permitted by law, including an award of punitive damages, plus a mandatory injunction compelling the Defendants to publish another retraction with language approved by the Court, costs, attorneys' fees and such other relief as the Court may deem appropriate and just.

CALLAGY LAW
*A Limited Liability Company*

By:  _____
Matthew R. Major, Esq. (035 18-2010)
Mack-Cali Centre II
650 From Road, Suite 565
Paramus, New Jersey 07652
Phone: (201) 261-1700
mmajor@callagylaw.com
Attorneys for Plaintiff, James O'Keefe, III.

Dated: September 16, 2013

4

### CERTIFICATION PURSUANT TO R. 4:5-1

I certify that the matters in controversy in this action are not the subject of any other action pending in any other court or of a pending arbitration proceeding. No other action or arbitration proceeding is presently contemplated and I am presently aware of no other parties that should be joined in this action.

### JURY DEMAND

Plaintiff hereby demands trial by a jury on all issues in this matter.

### DESIGNATION OF TRIAL COUNSEL

Matthew R. Major, Esq. is hereby designated as trial counsel.

**CALLAGY LAW**
*A Limited Liability Company*

By: _____

Matthew R. Major, Esq. (035182010)
Mack-Cali Centre II
650 From Road, Suite 565
Paramus, New Jersey 07652
Phone: (201) 261-1700
mmajor@callagylaw.com
Attorneys for Plaintiff, James O'Keefe, III.

Dated: September 16, 2013

5

09/26/2013 THU 10:25 FAX                                                    ☑011/021

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to New Jersey Court Rule 4:10-2(b), demand is made that Defendant disclose to Plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including, but not limited to, any and all declaration sheets. This demand shall include and cover not only primary coverage, but also any and all excess, catastrophe and umbrella policies.

**CALLAGY LAW**
*A Limited Liability Company*

By: _____

Matthew R. Major, Esq. (023518-2010)
Mack-Cali Centre II
650 From Road, Suite 565
Paramus, New Jersey 07652
Phone: (201) 261-1700
mmajor@callagylaw.com
Attorneys for Plaintiff, James O'Keefe, III.

Dated: September 16, 2013

6

## Mary Jacoby

| | |
|---|---|
| **From:** | Daniel Francisco <daniel@projectveritas.com> |
| **Sent:** | Thursday, August 29, 2013 11:38 AM |
| **To:** | Mary Jacoby |
| **Subject:** | Re: Correction Request: please respond |

We appreciate your attention to this matter. Please know it has nothing to do with indignation - the Government prosecuting the case was quite clear as to what happened in that incident, regardless of whatever personal beliefs are held regarding what transpired. No one deserves to be misrepresented as intending to commit a felony, when no such thing happened.

In your words, as bone fide journalists, your team could have read this document which has been widely available for over 3 years, straight from the very source of the office that prosecuted the case. Instead, the author elected to publish something that was both factually inaccurate and potentially damaging to O'Keefe's reputation.

Now that you have the court document, I look forward to seeing the update.

Lastly, I notice at the bottom of the article it mentions the author was unable to reach O'Keefe or Letten for comment. Could you forward to me the original email of the individual within our organization you contacted for comment? I was not notified of any communication from your team, and I would like to follow up internally with whoever received that request and failed to forward it to me.

Thank you,

**Daniel Francisco**
**Executive Director**
Tel: 914-908-2300
Fax: 914-908-2301
daniel@projectveritas.com

**This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.**

On Aug 29, 2013, at 10:56 AM, Mary Jacoby wrote:

Hello Daniel –

1

As bone fide journalists, we strive for accuracy and will add a clarification at your request. However, please spare me the indignation – no serious person would pull this kind of stunt.

Best regards,
Mary


Mary Jacoby
Editor-in-Chief | Main Justice
2122 P. St. NW, #201
Washington, D.C., 20037
202.621.6056 (o)
202.531.0623 (c)


**From:** Daniel Francisco [mailto:daniel@projectveritas.com]
**Sent:** Thursday, August 29, 2013 10:28 AM
**To:** Editors
**Subject:** Correction Request: please respond

In your article " Former U.S. Attorney Jim Letten Unloads on Conservative Prankster James O'Keefe" (http://www.mainjustice.com/2010/01/26/acting-u-s-attorneys-son-tried-to-bug-senators-office/) there is a line that reads as such:

"…activists had pretended to be telephone repairmen and were apparently trying to bug Landrieu's phones."

This is a slanderous statement, which has already been disproven by the Eastern Lousiana district court 3 years ago in a widely available affidavit. There was no attempt, "apparent" or otherwise, to tamper with the phone systems in any way. Please refer to the last paragraph on page 6 of the attached affidavit, particularly these quoted lines:

"…further investigation did not uncover evidence that the defendants intended to commit any felony…."
"…the Government's evidence would show that the defendants misrepresented themselves and their purpose for gaining access to the central phone system to orchestrate a conversation about phone calls to the Senator's staff and capture the conversation on video, **not to actually tamper with the phone system, or to commit any other felony."**


We request that you issue a public retraction to your readers and correct your article. Attempting to "bug" phones in a Senator's office is a serious crime, and an irresponsible thing to report when the court affidavit has been made widely available to the public.


**Daniel Francisco**
**Executive Director**
Tel:  914-908-2300
Fax: 914-908-2301
daniel@projectveritas.com


**This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email

2

in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2010 MAY 26   PM 12: 04

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO.  10-081 |
| v. | * | SECTION: K (3) |
| JOSEPH BASEL | * | VIOLATION: 18 U.S.C. § 1036(a) |
| STAN DAI | | 18 U.S.C. § 2 |
| ROBERT FLANAGAN | * | |
| JAMES O'KEEFE | | |
| | * * * | |

### FACTUAL BASIS

The defendants, **JOSEPH BASEL**, **STAN DAI**, **ROBERT FLANAGAN**, and **JAMES**

**O'KEEFE** (collectively, "the defendants"), have agreed to plead guilty as charged to the one-

count Bill of Information charging them with misdemeanor entry, or causing the entry, by false

pretenses to real property of the United States, in violation of Title 18, United States Code,

Sections 1036(a)(1), (b)(2), and 2.  In pleading guilty, the defendants admit the following facts as

set forth below.

Should this matter have gone to trial, the Government would have proved beyond a

reasonable doubt, through the introduction of competent testimony and admissible evidence, the

following facts to support the allegations charged by the United States Attorney in the Bill of

___Fee _____
___Process_____
_X_Dktd _____
___CtRmDep_____
___Doc. No._____

Information:

The Hale Boggs Federal Building, located at 500 Poydras Street, New Orleans, Louisiana 70130, is owned and operated by the United States of America and managed by the United States General Services Administration (hereinafter "GSA"). The Hale Boggs Federal Building houses the offices of numerous federal agencies and federal officials, including the New Orleans office of United States Senator Mary Landrieu. As such, the office constitutes real property belonging to the United States.

In addition to Title 18, United States Code, Section 1036, there are additional rules and regulations governing conduct on federal property. These rules and regulations are codified in various portions of the United States Code, Title 41 of the Code of Federal Regulations, and in the Local Rules. These types of laws, regulations and rules are meant to insure the safety and security of the occupants, visitors, proceedings and buildings of the Federal government.

The General Services Administration ("GSA"), the United States Marshals Service, the Court Security Officers, the Federal Protective Service, and the Federal Bureau of Investigation, among others, are tasked, individually and collectively, with maintaining the highest level of security for federal buildings in order to prevent incidents that could jeopardize the safety and security of people with business in the Federal Complex. As such, conduct in all offices contained in the Federal Complex is governed by all of the laws, regulations, and rules referenced above.

On or about January 20, 2010, **JOSEPH BASEL** ("**BASEL**"), **STAN DAI** ("**DAI**"), **ROBERT FLANAGAN** ("**FLANAGAN**"), and **JAMES O'KEEFE** ("**O'KEEFE**"), met for the purpose of discussing a variety of topics, including possible scenarios to engage the staff of

2

Senator Landrieu and record the interactions using audio and visual equipment.

On or about the afternoon of January 23, 2010, **FLANAGAN** received a phone call from **O'KEEFE**, during which **O'KEEFE** invited **FLANAGAN** to participate in their activities concerning Senator Landrieu's office. **O'KEEFE** further invited **FLANAGAN** to meet the next day to finalize the details and coordinate with the other participants.

On or about Sunday, January 24, 2010, **BASEL, DAI, FLANAGAN,** and **O'KEEFE,** met to practice how they would interact with Senator Landrieu's staff and record the interaction with the Senator's staff the next day. During this meeting, the defendants discussed what they would wear—disguises to make them look like telephone repairmen—and what equipment they would use to record the interaction.

At approximately 10:00 a.m. on or about January 25, 2010, **BASEL, FLANAGAN,** and **O'KEEFE** met at an office located near the Federal Complex to finalize their plan, check the recording devices, and mount a small video camera in one of the disguises. During the meeting **O'KEEFE** explained to **BASEL** and **FLANAGAN** how the recording equipment worked and directed them how to position themselves inside of the office.

On or about January 25, 2010, at approximately 11:00 a.m., **BASEL, FLANAGAN,** and **O'KEEFE** entered the Hale Boggs Federal Building and passed through the security screening. **DAI** remained outside of the building to provide support for **BASEL, FLANAGAN,** and **O'KEEFE. BASEL** and **FLANAGAN** each dressed in blue denim pants, a blue work shirt, a light fluorescent green vest, a tool belt, and carried a white, construction-style hard hat. At least one hard hat contained a video recording device, with a small camera installed on the brim of the hat. **O'KEEFE** instructed **BASEL** and **FLANAGAN** to wait for him to enter the Senate office

3

first and to come in shortly thereafter. **O'KEEFE** then entered the New Orleans office of United States Senator Mary Landrieu. Shortly thereafter, **BASEL** and **FLANAGAN** entered the office.

Upon entering the Senate office, **BASEL** and **FLANAGAN** stated to members of Senator Landrieu's staff that they were repair technicians from the telephone company and were there to follow up on reports of problems with the telephone system. **BASEL** and **FLANAGAN** were each wearing a white, hard construction hat, a tool belt, a fluorescent vest, and denim pants and tops. When **BASEL** and **FLANAGAN** entered the office, **O'KEEFE** positioned a digital recording device made to look like a cellular telephone in his hand so as to record **BASEL** and **FLANAGAN**.

One of Senator Landrieu's staff members (WITNESS 1) told **BASEL** and **FLANAGAN** that she did not report any phone problems and that the office was not experiencing any issues with the phone system. WITNESS 1 then turned her attention to **O'KEEFE** and asked if she could help him. **O'KEEFE** responded that he was waiting for a friend, who had asked him to meet her in Senator Landrieu's office.

**BASEL** asked WITNESS 1 for permission to test the phone system, and WITNESS 1 directed him to a phone sitting on a desk reserved for a staff member for Senator Landrieu. **BASEL** then walked behind the desk, lifted the phone handset from the cradle, questioned whether there was a dial tone, and handled the receiver. **BASEL** and **FLANAGAN** also pretended to call the phone with cellular phones in their possession. They told WITNESS 1 that they could not get through. **O'KEEFE** recorded these interactions.

**BASEL** also stated that he and **FLANAGAN** needed to perform repair work on the main telephone system and asked to be taken to the "central box." WITNESS 1 stated that she did not

4

know anything about the inner workings of the office phone system and told **BASEL** and **FLANAGAN** that they would have to speak with a representative from GSA about it.

While in the office, in keeping with the pretextual story, **O'KEEFE** represented to **BASEL** and **FLANAGAN** that he had recently attempted to place a call to the office of Senator Landrieu but that the call "wouldn't go through."

Subsequently, WITNESS 1 requested that **BASEL** and **FLANAGAN** accompany WITNESS 1 to the main GSA office. Both men accompanied WITNESS 1 to the GSA office.

In the hallway outside the GSA office, WITNESS 1, with **BASEL** and **FLANAGAN** following her, encountered a manager with GSA. WITNESS 1 explained to the GSA employee that **BASEL** and **FLANAGAN** had come to Senator Landrieu's office to repair the phone system, which was not in need of repair.

**BASEL** and **FLANAGAN** again said they were telephone repairmen, and **BASEL** asked the GSA employee to take them to the phone system's "central box" so that they could perform repair work.

The GSA employee asked **BASEL** and **FLANAGAN** if they had a work order or credentials. **BASEL** and **FLANAGAN** responded that the work order and their credentials were in their truck, which was parked just outside of the building. The GSA employee then informed **BASEL** and **FLANAGAN** that he would escort them to their truck so that they could provide the work order to him and present their credentials to him.

While WITNESS 1 took **BASEL** and **FLANAGAN** to the GSA office, **O'KEEFE** remained in Senator Landrieu's office. He continued to record the office and the remaining staff members. **O'KEEFE** stayed in the office for approximately six more minutes before pretending

5

to take a phone call from "Sam" and leaving the office.

Investigators with the Federal Bureau of Investigation and the United States Marshal's Office would testify that, in individual interviews on or about January 25, 2010, **BASEL** and **FLANAGAN** admitted that they were not telephone repairmen and that they entered the office of Senator Landrieu under false pretenses. **O'KEEFE** further admitted that he planned the activity and recorded **BASEL** and **FLANAGAN** inside of Senator Landrieu's office. Investigators would further testify that **BASEL, DAI, FLANAGAN**, and **O'KEEFE** each admitted in individual interviews that they collectively brain stormed scenarios to engage the Senator's staff in conversation, which they would record. **BASEL, DAI, FLANAGAN**, and **O'KEEFE** admitted that they worked together in the planning, coordination, and preparation of the activities.

In this case, further investigation did not uncover evidence that the defendants intended to commit any felony after the entry by false pretenses despite their initial statements to the staff of the Senatorial office and GSA requesting access to the central phone system. Instead, the Government's evidence would show that the defendants misrepresented themselves and their purpose for gaining access to the central phone system to orchestrate a conversation about phone calls to the Senator's staff and capture the conversation on video, not to actually tamper with the phone system, or to commit any other felony.

6

Both the Government and the defendants, **JOSEPH BASEL, STAN DAI, ROBERT FLANAGAN,** and **JAMES O'KEEFE,** do hereby stipulate and agree that the above facts are true and that they set forth a sufficient factual basis for the crime to which the defendants are pleading guilty.

**APPROVED AND ACCEPTED:**

JORDAN GINSBERG
Assistant United States Attorney
Illinois Bar Roll No. 6282956

5/26/10
Date

JAMES O'KEEFE
Defendant

3/24/2010
Date

MICHAEL J. MADIGAN, ESQ.
Attorney for the Defendant
Washington D.C. Bar Roll No.

3/24/2010
Date

7