NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES O'KEEFE, III, | Civil Action No.: 13-6530 (CCC) |
| Plaintiff, | |
| v. | **OPINION** |
| WDC MEDIA, LLC, *et al.*, | |
| Defendants. | |

**CECCHI, District Judge.**

### I. INTRODUCTION

This matter comes before the Court on the motion of Defendants WDC Media LLC, operator of MainJustice.com, and Mary Jacoby ("Defendants") to dismiss the First Amended Complaint of Plaintiff James O'Keefe, III ("Plaintiff"). ECF No. 21. No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Defendants' motion to dismiss is granted.

### II. BACKGROUND

On September 18, 2013, Plaintiff filed the Complaint in the instant action against the website MainJustice.com, its owner and publisher WDC Media LLC, and several unnamed defendants whom Plaintiff believed "caused, contributed and/or benefited from the conduct of the other Defendants as set forth [in the Complaint]," in New Jersey Superior Court. See ECF No. 1-2. Defendant WDC Media LLC subsequently removed the case to this Court and moved to dismiss the action for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 1, 3. On December 2, 2013, while the motion to dismiss was pending, Plaintiff cross-moved to amend the Complaint. ECF No. 10. The Court granted Plaintiff's motion to amend the

1

Complaint, terminating Defendant's first motion to dismiss, and Plaintiff filed a First Amended Complaint on June 27, 2014. ECF Nos. 18, 19. The First Amended Complaint differs from the original Complaint only insofar as Plaintiff added Mary Jacoby, owner of WDC Media LLC and Editor in Chief of MainJustice.com, as a defendant. Compare ECF No. 1-2 with ECF No. 19. Defendants then filed the instant motion to dismiss the First Amended Complaint. ECF No. 21.

Plaintiff alleges that WDC Media LLC published libelous statements about him in an article posted on its website, MainJustice.com. Am. Compl. ¶¶ 10-16. The article referenced the "Landrieu incident," an event that occurred on January 25, 2010. See Factual Basis Document, *United States v. Basel et al.*, Crim. No. 10-081 (E.D. La. May 27, 2010), Balin Decl., Ex. D, ECF No. 21-6 (the "Factual Basis Document") at 3.[1] At that time, disguised as telephone repairmen, Plaintiff and several associates entered the New Orleans offices of Senator Mary Landrieu. Id. at 3-4. According to the Factual Basis Document, which stipulated the facts underlying Plaintiff's eventual guilty plea, Plaintiff and his associates claimed that their purpose in entering the offices was to follow up on reports of problems with the telephone system. Id. at 4-6. The Factual Basis Document states that Plaintiff and his associates obtained permission to test the phone system, while secretly using a recording device to record the interactions in the office. Id.

During their visit, Plaintiff and his associates asked to be directed to the "central box" in order to perform repair work on the main telephone system. Id. At that point, the Government Services Administration questioned the men regarding their credentials. Id. According to the Factual Basis Document, Plaintiff and his associates eventually admitted to federal investigators

---

[1] The Court may properly consider both Defendants' article and the Factual Basis Document, because they are integral to and explicitly relied upon in the Amended Complaint. See In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). The Factual Basis document was also submitted as an exhibit attached to Plaintiff's original Complaint.

that they had entered Senator Landrieu's office under false pretenses, in order to orchestrate and record conversations with the Senator's staff. Id. A criminal complaint was filed against Plaintiff and his associates in the U.S. District Court for the Eastern District of Louisiana, alleging that Plaintiff and his associates entered the Senator's offices with the purpose of "willfully and maliciously interfering with a telephone system." Criminal Complaint, *United States v. Basel et al.*, Crim. No. 10-081 (E.D. La. May 25, 2010), Balin Decl., Ex. E.[2] Plaintiff and his associates subsequently pleaded guilty to the misdemeanor of entering federal property under false pretenses, and the Factual Basis document stipulating the facts underlying the plea was filed in the U.S. District Court for the Eastern District of Louisiana. See generally Factual Basis Document.

On August 26, 2013, MainJustice.com published an article referencing the 2010 "Landrieu incident." Am. Compl. ¶ 11. According to the Amended Complaint, the original version of the article stated, in relevant part:

> [Plaintiff] pleaded guilty to misdemeanor charges that [Plaintiff] entered the suburban New Orleans offices of Sen. Mary Landrieu under false pretenses. Wearing hard hats, tool belts and reflective vests, [Plaintiff] had pretended to be telephone repairman and were apparently trying to bug Landrieu's phones.

Id. Plaintiff's representative emailed the website, demanding a correction of the article, specifically objecting to the word "bug," and directing the publisher to the Factual Basis Document, which stated, in relevant part:

---

[2] In ruling on a motion to dismiss, the court may consider "public records, including judicial proceedings," Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999), as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1198 (3d Cir. 1993).

3

> [F]urther investigation did not uncover evidence that the defendants intended to commit any felony after the entry by false pretenses despite their initial statements to the staff of the Senatorial office and GSA requesting access to the central phone system. Instead, the Government's evidence would show that the defendants misrepresented themselves and their purpose for gaining access to the central phone system to orchestrate a conversation about phone calls to the Senator's staff and capture the conversation on video, not to actually tamper with the phone system, or to commit any other felony.

Id. at ¶ 12; Factual Basis Document at 6.

In response, Defendants modified the article, replacing the words "apparently trying to bug" with "trying to tamper." Am. Compl. ¶ 13. The full text of the relevant paragraph in the modified article reads:

> In May 2010, O'Keefe and three other activists pleaded guilty to misdemeanor charges that they entered the New Orleans offices of Sen. Mary Landrieu (D-La.) under false pretenses. Wearing hard hats, tool belts and reflective vests, the activists had pretended to be telephone repairmen and were trying to tamper with Landrieu's phones. Their felony charges were downgraded to misdemeanors. O'Keefe was sentenced to three years probation, 100 hours of community service and a $1500 fine.

See Balin Decl., Ex. G. Plaintiff alleges that both the original version of the article and the modified version are defamatory because the words "bug" and "tamper with" suggest that Plaintiff committed a felony. Id. at ¶¶ 15-16. In seeking to dismiss the complaint, Defendants argue that they cannot be liable because the article in question is substantially true and is incapable of a defamatory meaning. Defs.' Br. 11-13. Defendants also argue that Plaintiff's libel claim fails because the article is protected by New Jersey's fair report privilege. Id. at 13-16.

### III.  DISCUSSION

As a preliminary matter, the Court considers this motion as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and will rule on it as such. Although Plaintiff argues that Defendants have "attempt[ed] to taint the record with extraneous material outside of the four corners of the Complaint," Opp. Br. 7, in ruling on this motion the Court will only consider the allegations in the Amended Complaint, exhibits attached to the complaint or undisputedly

4

authentic documents on which the complaint relies, and matters of public record. See Pension Ben. Guar. Corp., 998 F.2d at 1198.

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Furthermore, "[a] pleading that offers labels and conclusions will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement[.]" Iqbal, 556 U.S. at 678 (internal citations omitted).

### A. Defamatory Meaning[3]

Under New Jersey law, in order to prevail in a defamation action, a plaintiff must demonstrate: "(1) that defendants made a false and defamatory statement concerning [the plaintiff]; (2) that the statement was communicated to another person (and not privileged); and (3) that the defendant acted negligently or with actual malice." G.D. v. Kenny, 15 A.3d 300, 310 (N.J. 2011). Libel is printed defamation. See Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 189 (3d Cir. 1998). "A defamatory statement is one that is false and injurious to the reputation

---

[3] The Court must determine which state's substantive law applies to this matter. Both parties rely upon New Jersey law and implicitly agree that New Jersey substantive law applies to this diversity action. The Plaintiff is a resident of New Jersey and argues that the allegedly defamatory article, available on the internet including in New Jersey, has harmed his reputation in his community. Am. Compl. ¶¶ 1, 16. Thus, the Court acknowledges New Jersey's interest in this litigation and will not *sua sponte* challenge the choice of New Jersey law. See Schiavone Const. Co. v. Time, Inc., 735 F.2d 94, 96 (3d Cir. 1984).

of another or exposes another person to hatred, contempt or ridicule or subjects another person to a loss of the good will and confidence of others." See Taj Mahal Travel, 164 F.3d at 189 (quoting Romaine v. Kallinger, 109 N.J. 282, 289 (1988)) (internal quotation marks omitted). The threshold for such determination is whether the statement or article is reasonably susceptible to a defamatory meaning. Romaine, 109 N.J. at 290. "This question is one to be decided first by the court," id., and the court should dismiss the action as a matter of law if the statement is not susceptible to a defamatory meaning, Taj Mahal Travel, 164 F.3d at 196.

In determining whether a statement is reasonably susceptible to a defamatory meaning, the statement must be taken in its entirety, considering its content, verifiability and context. Murphy v. Millennium Radio Grp. LLC, 650 F.3d 295, 310 (3d Cir. 2011) (citing Ward v. Zelikovsky, 136 N.J. 516, 529 (1994)); see also Romaine, 537 A.2d at 290 ("In assessing the language, the court must view the publication as a whole and consider particularly the context in which the statement appears."). The Court must look to the "fair and natural meaning which will be given" to the statements "by reasonable persons of ordinary intelligence." Romaine, 537 A.2d at 290.

Statements that clearly "sound to the disreputation" of an individual, including statements that allege that a plaintiff committed criminal conduct, are defamatory on their face. Lawrence v. Bauer Pub. & Printing Ltd., 446 A.2d 469, 473 (N.J. 1982). Statements that are substantially true, however, are not defamatory. G.D. v. Kenny, 15 A.3d 300, 310-11 (N.J. 2011); see also Taylor v. Amcor Flexibles, 669 F. Supp. 2d 501, 513 (D.N.J. 2009) ("Under New Jersey law . . . [a] plaintiff cannot make a prima facie case of defamation if the contested statement is essentially true"). When assessing whether a statement is substantially true, New Jersey law requires courts to overlook "minor inaccuracies," as long as "the substance, the gist, the sting of the libelous charge" is true. G.D., 15 A.3d at 311; see also Montefusco v. ESPN, Inc., 47 F. App'x 124, 125 (3d Cir. 2002)

(affirming dismissal of defamation claim on motion to dismiss, applying New Jersey law, where allegedly defamatory statements relating to criminal prosecution were accurate and thus incapable of defamatory meaning).

In this case, the dispute is not about whether the alleged libel accused Plaintiff of criminal activity, as Plaintiff does not contest that he pleaded guilty to a misdemeanor, but rather it is about *which type* of criminal offense was imputed to Plaintiff in Defendants' article. Plaintiff argues that Defendants' statements, "apparently trying to bug" and "trying to tamper with," constituted "falsely reporting that Plaintiff committed a felony." Opp. Br. 3. Defendants argue that these words are incapable of defamatory meaning as the relevant portion of the article was substantially true; it was abundantly clear that Plaintiff pleaded guilty to a misdemeanor. Defs.' Br. 12-13. Plaintiff responds that although the ultimate disposition of the Plaintiff's charges was reported accurately, "Defendants . . . paint[ed Plaintiff] to be a bumbling felon who got lucky and pleaded to a misdemeanor." Opp. Br. 2. Notably, Plaintiff does not dispute that he was initially accused of felony charges.

Plaintiff cannot satisfy the first element of a libel claim based on the selective examination of the words "bug" and "tamper" in the Defendants' article. Plaintiff claims that the article in question is libelous because the words "bug" and "tamper" falsely imputed felony conduct to Plaintiff. See Opp. Br. 3. The paragraph at issue, however, offering only a brief background about the Landrieu incident to give context to a larger article, conveyed clearly that Plaintiff pleaded guilty to the misdemeanor of entering Senator Landrieu's offices under false pretenses. See G.D., 15 A.3d at 311 (imprecise language stating that plaintiff was "a drug dealer who went to jail for five years for selling coke near a public school" was substantially accurate even though plaintiff

7

pleaded guilty to possession of cocaine with intent to distribute, his guilty plea mentioned nothing about a school, and he did not serve the full five years of his jail sentence).

Regardless of whether the article used the words "apparently trying to bug" or "trying to tamper," the few words challenged by the Plaintiff, taken in context, do not alter the fundamental gist of the paragraph—that Plaintiff was charged with felony conduct but he was ultimately guilty of only a misdemeanor. It is undisputed that Plaintiff and his associates did in fact enter Senator Landrieu's office disguised as telephone repairmen, did handle the telephone, and did request access to the central phone system, all without proper authorization. See Factual Basis Document at 3-5. Therefore, the words "trying to tamper with," understood in the colloquial sense,[4] convey the substantial truth of the Landrieu incident and do not alter the ultimate conclusion of the paragraph—that Plaintiff was guilty of a misdemeanor.[5] Even the initial version of the article, which Defendants altered at Plaintiff's request, conveys the substantial truth of the matter—*i.e.*, that it *appeared* that Plaintiff and his associates may have been trying to bug the phones in

---

[4] Tamper has multiple potential definitions, including: "to interfere so as to weaken or change for the worse," or "to try foolish or dangerous experiments with." *Tamper Definition* Merriam-Webster.com, http://www.merriam-webster.com/dictionary/tamper (last visited Mar. 26, 2015); see also *Tamper Definition*, Merriam-Webster.com, http://www.merriam-webster.com/thesaurus/tamper (last visited Mar. 26, 2015) (defining "tamper" as "to handle thoughtlessly, ignorantly, or mischievously" and listing synonyms including, "diddle (with), fiddle (with), fool (with), mess (with), monkey (with), play (with), tinker (with), toy (with)").

[5] Plaintiff's reasoning in his opposition brief appears to support this reading. Plaintiff states that "[t]he allegation of felony phone tampering, followed by a guilty plea to a misdemeanor, is a distinction likely only recognized by individuals possessing the requisite knowledge to recognize such legal peculiarities." Opp. Br. 14-15. Plaintiff thus appears to argue on the one hand that a layman of ordinary intelligence would not be able to recognize such "legal peculiarities" as the distinction between a felony and a misdemeanor, but on the other hand Plaintiff's entire defamation claim is based on the premise that an ordinary layman would attribute *felony* wrongdoing to Plaintiff, *over and above* the misdemeanor charge to which he pleaded guilty, solely as a result of the word "tamper." The Court is not convinced that "tamper" alters the substantial accuracy of the article.

question, given that they obtained access to the building disguised as telephone repairmen, were handling the telephones, and were equipped with and planned to use recording devices.

Courts addressing analogous situations have reached similar conclusions. See Orr v. Argus-Press Co., 586 F.2d 1108, 1113 (6th Cir. 1978) (use of the word "swindle" was permissible as a substantially accurate, colloquial substitute for "defraud," despite its potential to imply more serious wrongdoing); Nanji v. Nat'l Geographic Soc., 403 F. Supp. 2d 425, 432-433 (D. Md. 2005) (finding that use of "rape" instead of "more technically precise term, such as 'sexual assault' or 'sexual abuse,'" did not render article inaccurate, and collecting cases for proposition that "technical errors in legal nomenclature in reports on matters involving violation of the law are of no legal consequence" in defamation actions) (internal quotations omitted); Lambert v. Providence Journal Co., 508 F.2d 656, 658-59 (1st Cir. 1975) (holding that the term "murder" was incapable of defamatory meaning, even if it implied that plaintiff's killing of local man was unlawful, because the articles stated that plaintiff denied the murder charge or made it clear that no determination of plaintiff's involvement had been made). As with these cases, the statements at issue are not capable of a defamatory meaning because although Defendants' words may have been imprecise or not to Plaintiff's liking, each version of the article taken as a whole accurately portrayed Plaintiff's legal standing at the time of the article.

### B.  Fair Report Privilege

The substantial accuracy of the article in question also entitles Defendants to the protection of the fair-report privilege, which provides an absolute defense to defamation for fair and accurate reports based on public court filings. Salzano v. North Jersey Media Group, Inc., 993 A.2d 778, 796-97 (N.J. 2010). The determination of whether a report is full, fair and accurate, such that it is entitled to the protection of the privilege, is an objective determination for the court. Id. at 792.

In assessing the fairness and accuracy of a report for the purpose of applying the privilege, the New Jersey Supreme Court has noted that "a reporter is allowed to make factual errors and omissions," so long as the errors and omissions do not mislead readers. Id. "[I]t is not necessary that [the account] be exact in every immaterial detail . . . . It is enough that it conveys to the persons who read it a substantially correct account of the [contents of the official document]." Id. (citing Costello v. Ocean Cnty. Observer, 643 A.2d 1012, 1012 (N.J. 1994)).

Courts applying this law have held that reports were not entitled to the protection of the fair-report privilege where the articles in question omitted ultimate exculpatory facts in ways that were misleading. See id. at 793; see also Costello, 643 A.2d at 1019-20 (article was not protected by fair-report privilege where report inaccurately suggested that legal action was pending against plaintiff and omitted that draft complaint had never been signed or filed); Schiavone, 847 F.2d at 1088 (omission of exculpatory language in FBI memo—that appearance of plaintiff's name in the memo, which discussed disappearance of Jimmy Hoffa, did not suggest any criminality or organized crime associations—exceeded bounds of fair reporting); Reilly v. Gillen, 423 A.2d 311, 328 (N.J. Super. Ct. App. Div. 1980) (article about complaint accusing plaintiff of corruption, knowingly republished without reference to later dismissal of complaint, was not entitled to protection of fair-report privilege).

Here, by contrast, the ultimate exculpatory fact—that Plaintiff's felony charges were reduced to a misdemeanor plea—was accurately reported. Thus, even though the words "apparently trying to bug" and "trying to tamper" may have been imprecise, a reasonable person reading the whole article would not be misled as to the ultimate conclusion that Plaintiff was guilty only of a misdemeanor. See Salzano, 993 A.2d at 793 (although headline stating that "funds were taken" was "imprecise insofar as the 'taking' had not been adjudicated," language was entitled to

protection of fair report privilege because a reasonable person reading whole article, which stated that it was reporting on allegations contained in court filings, would understand that allegations had not been adjudicated). Plaintiff argues that "[a] fair report would have informed the reader that the initial charges that Plaintiff had intended to 'tamper' or 'bug' the phones was unfounded or would not have mentioned those baseless contentions at all." Opp. Br. 16. As discussed *supra* pages 8-9, however, each version of the article provided a substantially accurate summary of the events in question and the ultimate legal outcome. Moreover, the New Jersey Supreme Court counsels against "mincing of the words of the publication" to require a "verbatim regurgitation of the [court filing in question]." Salzano, 993 A.2d at 794. Thus, although Plaintiff may have preferred an exact recitation of the language in the Factual Basis Document, Defendants' "rough and ready summary" is entitled to the protection of the fair-report privilege as it is a fair and accurate report under New Jersey law. See id. at 792 (citing Riley v. Harr, 292 F.3d 282, 296 (1st Cit. 2002)).

Because Plaintiff has failed to meet the threshold requirements needed to establish a libel claim, and because Defendants are entitled to the protection of the New Jersey fair-report privilege, the Amended Complaint will be dismissed.

IV. **CONCLUSION**

Based on the reasons set forth above, the Defendants' motion to dismiss is granted. Plaintiff's Amended Complaint is hereby dismissed with prejudice. An appropriate order accompanies this Opinion.

Dated: March 30, 2015

**CLAIRE C. CECCHI, U.S.D.J.**